This is a quo warranto proceeding in the name of the State, on the relation of some ninety persons who allege that they are stockholders and members of the Dairy Farmers Protective League, Inc. (hereafter called the League), a corporation organized under the laws of this State and domiciled in Kentwood, Tangipahoa Parish, and that the defendants, H.E. Bankston, C.P. Schwartz and D.C. Gates, claim to have been elected to, and are now usurping the functions of President, Vice-President and Secretary-Treasurer, respectively, in said League. The relators allege that these defendants are illegally holding the said offices in the League for the reason that they were not elected in the manner provided by the charter or act of incorporation of the League, the charter providing that the stockholders shall elect annually a board of eleven directors who in turn select the President, Vice-President and Secretary-Treasurer, whereas, the defendants have caused a set of by-laws to be adopted whereby they have attempted to perpetuate themselves in office and deny relators the right to elect the officers of the League in the manner set forth in the charter.
There is annexed to the petition a copy of the act of incorporation of the League, dated July 12, 1933, signed by eleven incorporators (all signing by proxy, except three), and in the charter it is provided that the corporate powers shall be vested in a board of eleven directors who shall be elected annually by the stockholders in June of each year, the directors so elected to elect from their number a President, Vice-President and Secretary-Treasurer. The charter provides for a capital stock of $1,000, represented by 1,000 shares of the par value of $1 per share, each member to hold only one share of stock and to be entitled to one vote. The stock is non-transferable, and the corporation was to commence business when 250 shares of stock were subscribed and paid for.
The respondents filed an exception of lack of interest on the part of the relators for the reason that none of them were qualified stockholders or members of the League, as none of them hold any stock or membership cards in the League as required by the charter. This exception was referred to the merits and later overruled.
The respondents admit the formation of the League under the charter referred to, but they aver that the governing board and officers of the League have been elected in the manner provided for in by-laws adopted about the time the League was organized; that all members of the League since that time including relators, have consented to and acquiesced in the conduct and management of the affairs of the League and the election of its officers as provided for in the by-laws, and if the League ever had any corporate existence under the charter, the by-laws have obtained the force and effect of amendments to the charter in these respects. They specially plead estoppel against relators to question the operation of the League and the election of its officers under the by-laws in whose provisions relators have acquiesced. *Page 668 
There was judgment below in favor of relators decreeing respondents to be disqualified to serve in the respective offices to which they claim to have been elected and decreeing these offices vacant. A committee from the membership was named by the court to take charge of and control the affairs of the League, and this Committee was ordered to call and hold an election of the stockholders or members of the League for the purpose of electing eleven directors of the League, who in turn would elect the other officers, in accordance with the charter. From this judgment, respondents have appealed.
In our opinion, the exception of lack of interest on the part of relators has considerable merit. They admit that they do not hold any certificate of stock or membership cards in the League, nor have they ever subscribed and paid for any stock on the basis of $1 per share, nor has any one else, to their knowledge, ever paid for and had issued to him any stock in the League. The charter, as already stated, provides that the League will be a going concern, that is to say, it will begin to function as a corporate entity, when 250 shares of stock have been subscribed and paid for. As no stock has ever been subscribed and paid for by relators or any one else, it is difficult to see how relators can come into court as stockholders and members of a corporate entity and invoke the provisions in the act which is claimed to have brought the corporation into being, and at the same time admit, not only that they are not stockholders, but admit a state of facts indicating that the corporation never began to function as such. In other words, they are in the anomalous position of trying to enforce the provisions of an act of incorporation and at the same time admitting that they have never complied with the provisions of that act by subscribing to and paying for stock in the corporation, and by further admitting that there was never a sufficient number of shares of stock paid for and issued to give life to the corporation. Moreover, the charter limits the number of stockholders to 1000, whereas, the evidence shows that there are more than 1700 members of the League who pay dues and claim membership, and there is nothing to indicate that relators are among the fortunate one thousand members who can claim membership under the charter.
However, as we are convinced that relators are estopped from questioning the manner in which respondents were elected, we have decided to rest our opinion on the plea of estoppel. In assuming that relators have an interest in questioning the right of respondents to hold these offices in the League, we must assume that all the members of the League who pay dues, including relators, are members of the corporation, regardless of the fact that they have not complied with the act of incorporation, but have complied with the by-laws by which the affairs of the League have been conducted ever since its organization.
In the act of incorporation, the appearers declared that they were availing themselves of the provisions of the laws of the State of Louisiana relative to corporations, especially of Act 254 of 1914. This act relates to nontrading corporations, and we doubt if its provisions were intended to cover such objects and purposes as those for which the Dairy Farmers Protective League, Inc., was organized, being principally that for marketing dairy products on a cooperative basis by the members of the League. It is obvious to us that, while the League was organized under the laws of Louisiana, it was intended to be organized under the provisions of Act 57 of 1922, known as the cooperative marketing act. Indeed, not only do the purposes and objects for which the League was organized indicate that it was organized under this act, but the by-laws under which the League operated followed in almost every detail the general outlines of the cooperative marketing act. The incorporators of the League complied substantially with Section 7 of the above-mentioned cooperative marketing act in their attempt to form a corporation. The by-laws by which the League was to operate (and which were drafted just before the act of incorporation was signed) served as a basis for the plan of operation of the League. No one denies but that these by-laws were used by the League from the time of its organization until respondents were elected, as the basis for the operation of the League and the method of electing its officers (except for slight amendments adopted just before their election, but which amendments do not affect the question at issue).
These by-laws divide the members of the League into units composed of members in certain territory, and the affairs of the League are to be managed by a Board of Delegates consisting of three delegates elected by the members of each unit. The *Page 669 
governing unit is given the right to elect a president, vice-president and secretary-treasurer. The Board of Delegates meets once a month at Kentwood, the domicile of the League, and the officers are elected by the Board of Delegates at the June meeting in each year. The local units elect their local officers and have authority to conduct the affairs of the local unit, subject to the governing unit, or Board of Delegates. The by-laws provide the dues and qualifications for members in the League.
Section 9 of the cooperative marketing act above referred to, requires an association incorporated under the act to adopt by-laws within thirty days after its incorporation. It seems from the act that these associations may put in their by-laws practically everything deemed proper for the operation of the cooperative not inconsistent with law. The terms of the act in this respect are very liberal and elastic, evidently made so in order to permit a great deal of latitude in an organization composed of many members spread over a wide area. Section 11 of this act permits these associations to adopt by-laws providing that the territory in which the association has members may be divided into districts and that the directors may be elected according to such districts, the by-laws to specify how many directors are to be elected by each district and the manner of their election.
The League in this case evidently had in mind some such provision as this in its by-laws in providing for districts (called units) and the number of directors (called delegates) to be elected from each unit. While we would not want to be understood as holding that the League could change the provisions of its charter by different provisions in its by-laws as to the election of its officers, we point out the elastic provisions of the marketing act to effectuate its purpose to show that all members of the League, including relators, understood that they were legally conducting the affairs of the League under the by-laws and acquiesced in the management of the affairs thereof, including the election of officers, in accordance with the by-laws. In fact, it is only by the terms of the by-laws that relators can claim membership in the League and enjoy the benefits derived from membership therein, and they cannot now be heard to question the election of respondents as officers in the League in accordance with the by-laws by which alone they themselves can claim to be members.
For the reasons herein assigned, it is ordered that the judgment appealed from be and the same is hereby reversed, annulled and set aside, and it is now ordered that the suit of the relators be dismissed at their cost in both courts.
LeBLANC and DORE JJ., concur.